UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICCARDO GREEN and IMELDA ABREGO,

Plaintiffs,

v.

CALIFORNIA COURT APARTMENTS, LLC,

Defendants.

Case No. C07-334-MJP

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This matter comes before the Court on defendant California Court Apartments, LLC's motion for summary judgment and motion to dismiss for failure to state a claim. Having considered Defendant's motion, reply, and surreply (Dkt. Nos. 43, 62, & 70), and the exhibits and declaration attached thereto (Dkt. Nos. 44-45), Plaintiffs' response, surreply, exhibits, and declarations (Dkt. Nos. 61 & 65-69, 71), the amended complaint seeking Five Hundred Billion Dollars in damages (Dkt. No. 4), and the balance of the record, the Court GRANTS Defendants' motions and DISMISSES Plaintiffs' case in its entirety WITH PREJUDICE.

**Background**

Riccardo Green and his fiancé, Imelda Abrego, (collectively "Plaintiffs") began occupying an apartment at the California Court Apartments in February 2003. (Schilling Decl. Ex. A, Dkt. No. 44.) Green identifies himself as African-American and Abrego identifies herself as Mexican-American. (Dorrity Decl. Ex. E "Green Dep.," Dkt. No. 44-1, at 26 lines 19-22 [hereinafter

ORDER — 1

"Green Dep."]; Pls' Surreply, Dkt. No. 66, at 145.) Plaintiffs originally signed a six-month lease and continued their tenancy on a month-to-month basis until moving out on September 15, 2004. (Green Dep. at 42 lines 15-17.) From August 2003 to June 2005 Lori Matthews was the apartment manager at the California Court Apartments. (Schilling Decl. at 2.) Matthews's long-term boyfriend, Sam Guasta, moved in with Matthews in February 2004 and aided Matthews in her managerial duties. (Id.) Matthews is currently the chair of a local diversity council at a research laboratory in Spokane and serves on the National Diversity Steering Council. (Matthews Dep. at 5.) Dennis Schilling is a part-owner and the managing partner of California Court LP, which owns the California Court Apartments. (Id.) During the period in which Plaintiffs occupied an apartment at the California Court Apartments, roughly one-third of the residents were persons of color. (Id.)

Plaintiffs allege that Matthews and her boyfriend Guasta committed several racially discriminatory, retaliatory acts against them. (See Amend. Compl., Dkt. No. 4, at 1-22.) Plaintiffs state that Matthews made angry remarks to them one evening when she was summoned to make sure Plaintiffs' door-mat was returned to their apartment. (Green Dep. at 32 line 19, 34 line 8, and 34 lines 22-24; Matthews Dep. at 12 line 25, 13 line 1.) Plaintiffs allege that Matthews would periodically threaten to raise the monthly rent and three times threatened to evict them. (Green Dep. at 36 lines 13-15.) Plaintiffs also claim that Matthews once stated "you people are all the same," and that this statement displayed a racial animus. (Amend. Compl. at 8 ¶ 43.)

On June 12, 2004, a flood caused by Plaintiffs' neighbor flooded part of Plaintiffs' apartment. Part-owner Dennis Schilling arrived to inspect the damage and arranged to have the carpets fixed and cleaned. (Schilling Decl. at ¶ 4.)  Schilling and Plaintiffs agreed to have the carpets repaired on June 15, so that Plaintiffs could be present. (Green Dep. at 24 line 17; Matthews Dep. at 22 line 13, 23 line 17.)  Plaintiffs allege that they waited all day on June 15 and no one arrived to work on the carpet. (Green Dep. at 67.) Matthews, however, claims that the repairman did arrive, but that no one answered the door at Plaintiffs' apartment. (Matthews Dep.

ORDER — 2

at 23, lines 1-23.) A letter from the carpet repairman supports Matthews's version of the facts. (Green Decl., Dkt. No. 19, Ex. 4.) The work was performed three days later on June 18. (Matthews Dep. at 25 line 1; Green Dep. at 71 lines 2-6; Green Decl., Dkt. No. 19, Ex. 4.) Plaintiffs claim that the three-day delay was the result of racial discrimination by Schilling and Matthews. Plaintiffs also claim to have lost wages due to the repair delay. However, in his deposition, plaintiff Green admitted he lost no wages attributable to the repair. (Green Dep. at 13 lines 17-22; pages 14-15.)

To compensate Plaintiffs for the inconvenience caused by the water damage, Matthews offered Plaintiffs a $300 rent credit for July. (Green Dep. at 46 lines 18-21; Matthews Dep. Ex. 1.) Matthews was authorized by Schilling to give Plaintiffs this rental discount. Plaintiffs accepted the credit and it was applied to the July rent. (Green Dep. at 47 lines 5-9.; see Matthews Dep. Ex. 2.) Plaintiffs do not dispute that they paid $550 in rent for July, reflecting the $300 reduction. (Green Dep. at 52 lines 10-25.) In a letter dated July 6, 2004, Plaintiffs requested a rent reduction directly from Schilling. (Green Decl., Dkt. No. 19, at 12-13.) Schilling responded in a letter dated July 13, 2004, offering "a $400 rent credit for August" to settle all of Plaintiffs' outstanding complaints. (Schilling Decl. Ex. B; Green Decl., Dkt. No. 19, at 24.) Plaintiffs sent a letter sent to Schilling accepting the offer, but the letter was never accepted and was returned to Plaintiffs on August 20, 2004. (Green Decl., Dkt. No. 19, Ex. 10.) Plaintiffs contend that they only owed $450 for August rent, given the $400 rental credit applied to August's rent. However, Schilling maintains that his letter offered only another $100 rent credit, making the total credit $400.

Defendant did not receive August rent from Plaintiffs. Plaintiffs claim to have sent a check directly to Schilling, though they were required by the lease agreement to give the money to the manager. (Schilling Decl. Ex. A at 1; Green Dep. at 45, 50) The parties agree that rent was not paid in August to Matthews and Plaintiffs have not produced any evidence that a check for August rent was deposited. On August 6, after the 5-day grace period elapsed without receipt of

ORDER — 3

payment, Matthews posted a three-day pay or vacate notice to Plaintiffs. (Green Dep. at 50 lines 15-25.) This was common practice and Matthews did this to several other tenants who did not pay rent. (Matthews Dep. at 32 line 25; at 33 line 3; at 63-64.) Matthews states she only posted pay or vacate and eviction notices to Caucasians, and never to persons of color. Defendant did not evict Plaintiffs in August.

Plaintiffs retained a lawyer, Ronald Gomes, to represent them regarding the tenancy issues. (Green Decl., Dkt. No. 19, Ex. 41.) Gomes wrote to Matthews on August 12, 2004, requesting that she direct all of her communications to him rather than Plaintiffs. (Id.) In July and August, 2004, Plaintiffs filed several complaints alleging racial discrimination and retaliation to the U.S. Department of Housing and Urban Development ("HUD") and the Seattle Office of Civil Rights. Plaintiffs' complaint alleged acts of discrimination that began on August 6, 2004, when they received the three-day notice to pay or vacate for failing to pay rent on time. (Id.)

By September 6, 2004, Defendant had not received August or September rent from Plaintiffs. (Matthews Dep. at 34 line 3 to 35 line 3; Schilling Decl. at ¶ 7.) Schilling, whose wife Sandra is a member of the Washington bar, prepared a summons and complaint for unlawful detainer. (Schilling Decl. at ¶ 7.) Schilling gave the summons and complaint to Guasta to serve on Plaintiffs. (Id.) Guasta attempted to several times to serve Plaintiffs but was unsuccessful until September 11, 2004, when he tapped or lightly hit plaintiff Green with the papers and told him he was served. (Green Dep. at 59-60.) Plaintiffs did not accept the papers. (Guasta Dep. at 9-10.)

Plaintiffs mailed Matthews a letter dated August 31, 2004 stating they were giving their 20 day notice of termination of the rental agreement. (Dorrity Decl. Ex. K.) Plaintiffs included an $850 check in the letter. (Id.) Plaintiffs claimed that Defendant's acts forced them to move. (Id.) On September 16, 2004, Matthews received the letter and applied the check to the unpaid August rent. (Matthews Dep. at 34.) Plaintiffs moved out on September 15, 2004. (Id.)

On September 15, 2004 an unknown driver struck Plaintiffs' car, which was parked in

ORDER — 4

front of Plaintiffs' new apartment–five to ten blocks away from the California Court Apartments. (Amend. Compl. at 12 ¶ 70.) Plaintiffs have not submitted any evidence of and admits that he does not know who hit their car. (Green Dep. at 74-9.)

On February 1, 2008, Defendant moved for summary judgment on all claims and moved to dismiss several claims pursuant to Rule 12(b)(6). (Dkt. No. 43.) Plaintiffs filed a response in opposition on February 27, 2008, which was two days late per Rule 7(d)(3); it should have been filed at the latest by February 25, 2008. (Dkt. No. 61.) On February 29, 2008, Defendant filed a reply and requested the Court to strike Plaintiffs' response brief. (Dkt. No. 62.) The parties have exchanged "surreply" briefs. (Dkt. Nos. 66 & 70.)

The Court has jurisdiction over Plaintiffs' civil rights claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

**Discussion**

**I.      Motion to Strike Response Brief**

In its reply brief, Defendant requests the Court to strike Plaintiffs' response brief because it was filed two days late and lacks plaintiff Abrego's actual signature. In the interests of adjudicating this matter on the merits, the Court accepts the brief, in spite of its defects.

**II.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), Defendant moves to dismiss several of Plaintiffs' claims, including: (1) the claim for damages related to Plaintiffs' car being struck by an unknown driver (Amend. Compl. at 12 ¶ 70), (2) the request that Sandra Schilling be disbarred (Id. at 30 ¶ 22), (3) the request for lost wages (Id. at 28 ¶ 2), and (4) the request for damages for violation of 42 U.S.C. § 3604(c). The Court construes the pleadings liberally in light of Plaintiffs' pro se status, see Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007), and dismisses all four claims.

The Court dismisses Plaintiffs' claim for damages related to the harm done to their car. Plaintiffs have failed to allege or present any facts that could permit the Court to find that Defendant damaged their car. Moreover, Plaintiffs admit that they cannot demonstrate who hit

ORDER — 5

the car. (Green Dep. at 75-77.)

Plaintiffs have voluntarily dismissed their request for disbarment of Sandra Schilling. (Pls. Resp in Opp. to SJ, Dkt. No. 61, at 11.) Moreover, Plaintiffs cannot seek Schilling's disbarment. Only the Washington State Supreme Court may discipline, disbar, or suspend Washington bar members. See Wash. State Bar Ass'n v. State, 125 Wn.2d 901, 908 n.10 (1995).

The Court need not address Plaintiffs' claim for lost wages arising out of the delay in repairing the carpets as a 12(b)(6) issue. That claim appears only in the request for relief at the conclusion of their complaint; it is not an independent cause of action but arises out of Plaintiffs' allegations concerning violations of the Residential Landlord-Tenant Act, RCW 59.18.060 *et seq.*. As those claims are discussed and dismissed below (*see* Section III.B), the request for damages arising out of those claims will likewise fall away.

The Court dismisses Plaintiffs' claim that Defendant's failure to post notice of the Fair Housing Act and Washington's Residential Landlord-Tenant Act is a violation of the Fair Housing Act, 42 U.S.C. § 3604(c). Section 3604(c) requires the plaintiff to show that the defendant made, printed, or published a discriminatory notice, statement or advertisement. 42 U.S.C. § 3604(c). Plaintiffs have alleged Defendant violated section 3604(c) due to a failure of publication. Because section 3604(c) does not apply to non-existent publications, Plaintiffs have not stated a claim on which relief may be granted.

**III.    Summary Judgment**

After considering the evidence in the light most favorable to the non-moving party, the Court must grant summary judgment if there are no "genuine issue[s] of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While "some alleged factual dispute between the parties will not defeat" a motion for summary judgment, "disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Once a party has moved for summary judgment, the non-moving party must provide sufficient evidence

ORDER — 6

such that a reasonable jury could decide in their favor. Id. at 248.

### A. The Fair Housing Act and Washington's Law Against Discrimination

Plaintiffs contend that Defendant violated the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. and Washington's Law Against Discrimination, RCW 49.60 et seq. Defendant responds that both claims must fail because Plaintiffs have shown neither direct evidence of discrimination, nor prima facie evidence of discrimination to satisfy the first step of the three-step McDonnell Douglas burden-shifting framework. Alternatively, Defendant asserts that if there is prima facie evidence of discrimination, Defendant has demonstrated valid nondiscriminatory reasons for its actions and that Plaintiffs cannot demonstrate discrimination. Defendant is correct and entitled to summary judgment on both federal and state claims.

The Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Washington's Law Against Discrimination is interpreted in the same manner as the Fair Housing Act. See Kees v. Wallenstein, 161 F.3d 1196, 1199 (9th Cir. 1998). The Court's determination of Plaintiffs' Fair Housing Act claims will also decide the outcome of Plaintiffs' Law Against Discrimination claims. Id.

A plaintiff may bring a claim under the Fair Housing Act on either a disparate treatment or disparate impact theory. See Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999). The plaintiff can support a claimed violation of the Fair Housing Act under either theory by demonstrating direct evidence of discrimination. Alternatively, the plaintiff can employ the burden-shifting framework announced by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) to demonstrate a violation of the Act.

The McDonnell Douglas framework requires a three-step analysis of a claim of discrimination. At step one, the plaintiff must present prima facie evidence of discrimination. This is a low burden: "The requisite degree of proof necessary to establish a prima facie case . . .

ORDER — 7

1  on summary judgment is minimal and does not even need to rise to the level of a preponderance
2  of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). At step two, the
3  burden shifts to the defendant to show some legitimate, nondiscriminatory reason for the action.
4  See McDonnell Douglas, 411 U.S. at 802. The defendant meets this burden by setting forth a
5  legally sufficient explanation. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255
6  (1981). At step three, the burden shifts back to the plaintiff to persuade "the court that she has
7  been a victim of intentional discrimination, 'either directly by persuading the court that a
8  discriminatory reason more likely motivated the [defendant] or indirectly by showing that the
9  [defendant's] proffered explanation is unworthy of credence.'" Harris, 183 F.3d at 1051 (quoting
10 Burdine, 450 U.S. at 256).

11 The prima facie elements vary somewhat between disparate treatment and disparate
12 impact claims. The prima facie elements of disparate treatment discrimination are: "(1) plaintiff's
13 rights are protected under the [Fair Housing Act]; and (2) as a result of the defendant's
14 discriminatory conduct, plaintiff has suffered a distinct and palpable injury." Harris, 183 F.3d at
15 1051. The prima facie elements of a disparate impact discrimination claim are: "(1) the occurrence
16 of certain outwardly neutral . . . practices, and (2) a significantly adverse or disproportionate
17 impact on persons of a particular [type] produced by the [defendant's] facially neutral acts or
18 practices." Pfaff v. U.S. Dept. of Housing and Urban Dev., 88 F.3d 739, 745 (9th Cir. 1996)
19 (quoting Palmer v. United States, 794 F.2d 534, 538 (9th Cir. 1986)). This impact must at least
20 show that "'the defendant's actions had a discriminatory effect.'" Id. (citing Keith v. Volpe, 858
21 F.2d 467, 482 (9th Cir. 1988)). "'Discriminatory effect' describes conduct that actually or
22 predictably resulted in discrimination." Id. (citing Keith, 858 F.2d at 482)).

23 Because Plaintiffs have not specified the theory under which they bring their Fair Housing
24 Act claims, the Court will analyze the claims under both a disparate treatment and disparate
25 impact theory.

26       **i.**      **Disparate Treatment**

27

ORDER — 8

Plaintiffs have not presented sufficient direct evidence of discriminatory treatment to sustain their claim. Accepting the facts as Plaintiffs state them, the records shows that Plaintiffs had an unpleasant relationship with Matthews, had their doormat moved, were forced to wait three days longer than promised to have a carpet repaired from water damage, were threatened on occasion with increased rent and eviction, and were evicted. There is no evidence, however, that these acts occurred on account of race, gender, or nationality. There is one ambiguous statement Plaintiffs allege that Matthews made that Plaintiffs claim was racist: "you people are all the same!" (Amend. Compl. at 8 ¶ 43.) However, the statement is not evidence of direct racial discrimination and appears facially neutral. Cf. Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006) (stating that a Alabama plant manager's use of "boy" when addressing African-American employees was prima facie evidence of discrimination, but not direct evidence).

Under the McDonnell Douglas framework, Plaintiffs have established a prima facie case of discrimination. Plaintiffs have shown at least a subjective belief that negative acts were taken against them on account of race. See Wallis, 26 F.3d at 889 (burden of proof is below a preponderance of the evidence). It is conceivable that the delay in fixing the carpet was related to his race and that he was evicted solely because of his race. Moreover, Plaintiffs contend that the manager yelled at them for things that were not their fault and that only their race was the basis for her complaints. The statement "you people are all the same," when read in light of the facts Plaintiffs present also satisfies a prima facie showing of discrimination. See Ash, 546 U.S. at 456.

Defendant has offered valid, nondiscriminatory reasons for all the of the acts of which Plaintiffs complain. First, Defendant did not move Plaintiffs' door-mat, but did see to it that it was returned promptly upon their request. Second, the carpets in Plaintiffs' apartment were fixed within 6 days of the flooding and part of the delay is attributable to Plaintiffs, who required that they be present for the repair. (See Green Decl., Dkt. No. 19, Ex.4.) Third, Matthews's threats of eviction were made because Plaintiffs had failed to pay rent in the manner required by the lease and Schilling did not receive any rental payment from Plaintiffs. Fourth, the eviction and pay or

ORDER — 9

vacate notices were the result of Plaintiffs' failure to pay rent on time and in the manner in which was required by the lease. The record shows that Schilling worked diligently to respond to Plaintiffs' complaints and offered substantial discounts on rent.

The evidence presented by Plaintiffs to rebut these nondiscriminatory reasons is insufficient to carry their burden. See Harris, 183 F.3d at 1051. There is no evidence of intentional discrimination and Plaintiffs have not shown that any of Defendant's explanations are "unworthy of credence." Id. Defendant's acts were racially-neutral. See Burdine, 450 U.S. at 255-56.

The Court dismisses Plaintiffs' claim that Defendant violated the Fair Housing Act through discriminatory, disparate treatment. The Court dismisses Plaintiffs' Washington anti-discrimination claims for the same reasons. See Kees, 161 F.3d at 1199.

### ii. Disparate Impact

Plaintiffs have not established direct evidence or even prima facie evidence of discrimination under a disparate impact theory. Other similarly situated Caucasian tenants at the California Court Apartment were treated no differently from Plaintiffs. Matthews evicted several Caucasian tenants for failure to pay rent and never once evicted a person of color other than Plaintiffs. (Matthews Dep. p 10-11.) During the relevant time period, the California Court Apartment rented to other African-American, Hispanic, and Asian persons and none has accused Defendant of racial discrimination. (Matthews Dep. at 10-11.) There is no evidence that any non-Caucasian tenants were evicted or suffered adverse action by the management at the California Court Apartments. This is not sufficient to show prima facie evidence of "a significantly adverse or disproportionate impact on persons of a particular [type] produced by the [defendant's] facially neutral acts or practices." Pfaff, 88 F.3d at 745.

The Court dismisses Plaintiffs' disparate impact claim that Defendant violated the Fair Housing Act. Moreover, the Court dismisses Plaintiffs' Washington anti-discrimination claim for the same reasons. See Kees, 161 F.3d at 1199.

ORDER — 10

### iii. Retaliation and Washington's Law Against Discrimination

Because there is no evidence of discrimination, Plaintiffs' claim of retaliation must fail. See Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001) (a claim of retaliation requires a finding of discrimination).

### B. Washington's Residential Landlord-Tenant Act

Plaintiffs allege violations of the Washington Residential Landlord-Tenant Act ("the Act"), RCW 59.18.060, -.230, -.240, -.250, -.352, & -.354. Defendant has not moved for summary judgment on these claim, except insofar as it seeks "dismissal of plaintiffs' claims in their entirety." On its own motion, the Court dismisses these claims under Rule 12(b)(6). See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). "Such a dismissal may be made without notice where the claimant cannot possibly win relief." Id. However, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007). Having reviewed the entire record, the Court is convinced that Plaintiffs cannot sustain a claim for any violations of the Act.

### i. RCW 59.18.060

Plaintiffs allege that Defendant violated RCW 59.18.060, which lists the statutory duties required of landlords. Generally, the landlord must "keep the premises fit for human habitation." RCW 59.18.060. More specifically, the landlord must keep the common areas reasonably clean, maintain structural components in reasonably good repair, comply with any applicable code, statute, ordinance, or regulation, make repairs, control pests, ensure the living area is weatherproof, keep appliances functioning, notify tenants of fire safety information, inform tenants of risks of mold, and provide the tenant the landlord's name and address. RCW 59.18.060(1)-(13). The complaint and evidence submitted, construed in Plaintiffs' favor, do not allege sufficient facts to support a claim for violations of the Act.

Plaintiffs also indirectly allege a violation of RCW 59.18.070(3), contending that the repair

ORDER — 11

of his carpet took too long. Under this section of the Act, the landlord must fix non-major fixtures or non-hazardous conditions within 10 days. RCW 59.18.070(3). Defendant had 10 days to fix the carpets. The complaint and undisputed facts demonstrate that the leak was fixed within 6 days of the incident. Plaintiffs have not stated a claim under this section of the Act.

### ii. RCW 59.18.230

This section of the Act makes it unlawful for a lease or agreement to require the tenant waive rights under the Act. RCW 59.18.230(1). Plaintiffs do not allege or present any evidence that they were required to waive a right under the Act. Plaintiffs have failed to state a claim on which relief can be granted. The Court dismisses this claim.

### iii. RCW 59.18.240 & -.250

This section of the Act prohibits a landlord from making or threatening retaliatory acts against a tenant who has filed a complaint against the landlord for failing "to substantially comply with any code, statute, ordinance, or regulation governing the maintenance or operation of the premises, if such condition may endanger or impair the health or safety of the tenant." RCW 59.18.240(1). The landlord is also forbidden from retaliating against a tenant who has asserted or enforced his rights under RCW 59.18. Notably, RCW 59.18 does not address discrimination on the basis of race, national origin, or gender. However, RCW 59.18.250 states that there is no presumption that the eviction is a reprisal or retaliatory if "at the time the landlord gives notice of termination of tenancy pursuant to chapter 59.12 RCW the tenant is in arrears in rent . . . ." RCW 59.18.250.

Plaintiffs have failed to allege or present facts that they filed a complaint with a governmental authority seeking enforcement of the Act or that Schilling was not in compliance with maintenance standards that were a threat to Plaintiffs' safety. Plaintiffs' complaints submitted to the Seattle Office of Civil Rights and the U.S. Department of Housing and Urban Development were in regards to claims of racial discrimination, and insufficient to state a claim under RCW 59.18.240. The Court dismisses these claims pursuant to Rule 12(b)(6).

ORDER — 12

          **iv.**      **RCW 59.18.352 & -.354**

Plaintiffs allege that Defendant violated both RCW 59.18.352 and RCW 59.18.354. Plaintiffs have failed to state a claim under both sections. First, RCW 59.18.352 requires that the plaintiff received a threat from another tenant, that the tenant made the threat with a firearm, that the threatening tenant was arrested, and the landlord failed to evict the threatening tenant. RCW 59.18.352(1). Plaintiffs have not alleged or produced facts that they received any threats from another tenant with a firearm and or that an arrest was made. Second, RCW 59.18.354 requires that the plaintiff receive a threat from the landlord, that the landlord make the threat with a firearm or deadly weapon, and that the landlord was arrested as a result. Again, Plaintiffs have made no allegation or showing that the landlord threatened them with a firearm or deadly weapon, or, for that matter, that he threatened them at all. The Court dismisses both claims pursuant to Rule 12(b)(6).

    **C.**      **Negligent and Intentional Infliction of Emotional Distress**

Plaintiffs' complaint alleges that Defendant intentionally and negligently inflicted emotional distress. These claims are without merit. To prove intentional infliction of emotional distress (outrage), the plaintiff must show: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." Snyder v. Med. Serv. Corp. of E. Washington, 145 Wn.2d 233, 243 (2001) (citation and quotation omitted). To prove negligent infliction of emotional distress, the plaintiff must show duty, breach, causation, and damages. Moreover, the plaintiff must prove he has suffered emotional distress by objective symptomatology, and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence. Kloepfel v. Bokor, 149 Wn.2d 192, 197 (2003).

Plaintiffs have presented insufficient evidence of "extreme and outrageous" conduct to satisfy their burden of proof to support a claim of intentional infliction of emotional distress. See Snyder, 145 Wn.2d at 243. Plaintiffs' negligent infliction of emotional distress claim is also

ORDER — 13

unsupported by the evidence. Plaintiffs have failed to present any evidence of objective symptomatology or medical evidence of an emotional disorder as a result of Defendant's conduct. See Kloepfel, 149 Wn.2d at 197.

The Court dismisses both claims.

**Conclusion**

The Court GRANTS Defendant's motion to dismiss Plaintiffs' claims for damages related to the car accident, disbarment, and violations of 42 U.S.C. § 3604(c). On its own initiative and pursuant to Rule 12(b)(6), the Court DISMISSES Plaintiffs' claims relief under Washington's Residential Landlord-Tenant Act. Having considered the facts in the light most favorable to Plaintiffs, the Court GRANTS Defendant's motion for summary judgment and DISMISSES Plaintiffs' case in its entirety WITH PREJUDICE.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: March 10, 2008

Marsha J. Pechman
U.S. District Judge

ORDER — 14